# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

**DENISE MOOREN, et al.,**    )
    )
    **Plaintiffs,**    )
    )
    )    Civil Action Number
**vs.**    )    **5:12-cv-00230-AKK**
    )
**SYSTEM STUDIES &**    )
**SIMULATION, INC., et al.,**    )
    )
    **Defendants.**    )

## MEMORANDUM OPINION AND ORDER

Denise Mooren, Elizabeth Foster, and Katrina Matthews bring this action against System Studies & Simulation, Inc. (S3), Jan Smith (S3's owner and CEO), and Gary Rigney (a lawyer who was in private practice and represented S3 as general counsel). Doc. 118. Collectively, plaintiffs allege that S3 unlawfully terminated their employment in violation of the anti-retaliation provisions of the False Claims Act, 31 U.S.C. § 3730(h), as amended, and 42 U.S.C. §§ 1981 and 1981a. Doc. 118. Mooren also brings a claim under the anti-retaliation provisions in 41 C.F.R. 60-1.32, Title VII of the Civil Rights Act of 1964, the Vietnam Era Veterans' Readjustment Assistance Act of 1974, Section 503 of the Rehabilitation Act of 1973, and Title I of the Americans with Disabilities Act of 1990. Finally, plaintiffs allege violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, for failure to pay overtime (Foster) and for retaliation (Mooren and Matthews).

In their separate motions for summary judgment, Rigney asserts that he is not employee and that the claims against him are due to be dismissed, and S3 and Smith argue that the plaintiffs cannot prove that they engaged in a protected activity or that they suffered an adverse action, and that Foster and Matthews cannot establish a violation of the FLSA. Docs. 127; 128 at 10, 25–27. For the reasons stated below, except for Matthews' Title VII, Section 1981, and FCA retaliation claims against S3 and Smith (1981 and FCA only), the motions are due to be granted.

## I.    STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation

marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252)).

## II.    FACTUAL BACKGROUND

Smith is the owner and CEO of S3. Doc. 137-8 at 4. As a government contractor, S3 is required to maintain an accounting system that complies with the Defense Contract Audit Agency. 48 C.F.R. § 16.01-3(a)(3). To meet its obligations, during the relevant period, S3 used Deltek's Costpoint financial accounting package and Cognos software package to prepare human resources reports and to gather information to respond to various governmental audits. Doc. 131-1 at 11.

S3 hired Mooren as a Senior Accountant in 2007. Doc. 131-5 at 98–100. Mooren's duties included reconciling S3's invoices, preparing S3's annual incurred cost submissions, and preparing reports using Costpoint and Cognos. Doc. 131-1 at 7–8.

S3 hired Foster as a payroll administrator in 2009. Doc. 131-4 at 7.  Foster's duties included processing labor and payroll using Costpoint and paying various state and local payroll taxes. *Id.* at 8.

S3 hired Matthews as Human Resources Manager in 2011. Doc. 131-5 at 98–100. S3 maintains that it hired Matthews based on Matthews' claimed experience in Equal Employment Opportunity reporting, and that it learned subsequently that Matthews lacked this relevant and essential experience.

Shortly after Matthews started at S3, she discovered that the Office of Federal Contract Compliance (OFCCP) intended to audit S3's compensation data for its 2010 affirmative action plan (AAP). Doc. 137-2 at 37. To prepare for the audit, S3 engaged DYAS, a consulting firm, to aid Matthews in preparing S3's response. *Id.* Also, S3 assigned Foster to assist Matthews in pulling the data from Costpoint and Cognos to respond to the OFCCP. While gathering the data, Foster and Matthews discovered purported evidence of pay discrimination and wrongdoing. First, based on the updates in the general labor categories for employees with no corresponding notes in the employee personnel files, Foster and Matthews concluded that S3 had improperly changed the labor categories. Doc. 131-4 at 33. Second, Foster and Matthews also noted purported pay discrepancies between white males and minorities that Suzanne Ryan, S3's Chief Financial Officer, purportedly concealed by changing the general labor category codes. *Id.* at 42. Based on their discovery, Foster and Matthews asked Ryan about her rationale in updating the electronic records without doing so in the actual personnel files. *Id.* at 31. After this conversation, S3 pulled Foster and Matthews from the audit, and decided that Smith would review all documents before S3 sent them to DYAS for it to use in responding to the OFCCP. *Id.* at 31–32; doc. 137-1 at 43.

On October 31, 2011, Foster filed a complaint with the Alabama State Board of Public Accountancy, in which she accused Ryan of falsifying records at Smith's

direction and requested that the appropriate government agency audit S3. Doc. 137-2 at 10–11. Also, Foster accused Ryan of using others to sit for the continuing education classes Ryan needed to re-activate her accounting license. *Id.*

Although Ryan did not need an active license to perform her duties for S3, Smith viewed Foster's complaint as a personal attack against Ryan because it threatened Ryan's credentials. Doc. 131-2 at 81. Therefore, Smith decided to investigate the allegations, and assigned the task to Rigney, an outside lawyer S3 used as its general counsel. Rigney conducted the interviews at S3's headquarters under oath before a court reporter. *Id.* at 52–53.

When Rigney met with Foster, Foster declined to submit to an interview without her attorney. Doc. 131-4 at 100. Consequently, S3 placed Foster on administrative leave until she retained an attorney. *Id.* Five days later, after hiring a lawyer, Foster submitted to an interview during which she admitted that the documents she sent to the Accounting Board were not indicative of fraud. *Id.* at 13–15. Consequently, on November 21, 2011, S3 terminated Foster's employment, for filing a false complaint with the Accounting Board. Doc. 131-2 at 89.

On the same day Rigney interviewed Foster, Rigney and Smith also met with Matthews. Doc. 131-2 at 58. During the interview, Smith asked about the accuracy of Matthews' experience. *Id.* Based on Matthews' purported admission that she had no experience preparing AAP or EEO reports, *id.* at 57–59, Smith reassigned

Matthews from HR Manager to a personnel manager role with the same rate of pay, effective November 7, 2011, *id.* at 60. However, S3 waited several days to present Matthews with the paperwork reflecting this transfer. Doc. 137-2 at 41. On November 17, 2011, the day after the transfer took effect, S3 discharged Matthews due to Matthews' purported dissatisfaction with the change in her duties. Doc. 131-2 at 59–60, 91–93.

Sometime after Rigney interviewed individuals about Foster's complaints, Mooren notified Tom Houser (S3's Vice President), Smith, and Ryan by email that she had filed a complaint with the Department of Defense based on her belief that S3 had engaged in fraudulent activity by falsifying information to government agencies. Doc. 131-1 at 77. In Mooren's email, she described the fraudulent activity as purported violations of the FLSA and the making of employment decisions based on race and gender. *Id.*

In light of Mooren's email, Smith engaged Rigney to conduct another investigation. Doc. 131-2 at 68. When Rigney met with Mooren on November 28, 2011, Mooren refused to describe the specific incidents of purported fraud, and instead alleged generic fraudulent practices. Doc. 131-1 at 179–80. On March 29, 2012, S3 discharged Mooren. Doc. 137-2 at 50.

# III.  ANALYSIS

Because the standard for analyzing FLSA, Title VII, FCA, and Section 1981 retaliation claims is the same in this Circuit, *see Wolf v. Coca-Cola Co.,* 200 F.3d 1337, 1342–43 (11th Cir. 2000), the court will begin its analysis with plaintiffs' retaliation claims. The court will then address Foster's failure to pay overtime FLSA claim separately in Section B.

## A. *Retaliation Claims*

The False Claims Act prohibits adverse employment actions because of lawful acts an employee made "including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section [ . . . ]." 36 U.S.C. § 3730(h). To succeed, a plaintiff must demonstrate a causal connection between her protected activity and the retaliatory actions, because § 3730(h) "provides relief only if the whistleblower can show by a preponderance of the evidence that the employer's retaliatory actions resulted 'because' of the whistleblower's participation in a protected activity." S. Rep. 99-345, at 34. Accordingly, the plaintiffs must establish a prima facie case by demonstrating that (1) the employer is covered by the act at issue, (2) the employee engaged in protected activity, (3) the employee suffered an adverse action, and (4) there is an inference of causation between the protected activity and the adverse action. *Bechtel Const. Co. v. Secretary of Labor*, 50 F.3d 926, 933–34 (11th Cir. 1995). Protected activity is

conduct that is in furtherance of an FCA action and aimed at matters which are calculated to lead to a viable FCA action. 31 U.S.C. § 3730(h). An employee is protected "when there was at least a 'distinct possibility' of litigation under the False Claims Act at the time of the employee's action." *United States ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1303 (11th Cir. 2010) (internal citation omitted). However, this Circuit broadly interprets the FCA to extend protection to situations "in which the plaintiff did not even know of the FCA or that her conduct was protected, as long as FCA litigation was a 'distinct possibility' when the plaintiff acted." *Mann v. Olsten Certified Healthcare Corp.,* 49 F. Supp. 2d 1307, 1313 (M.D. Ala. 1999).

Retaliation claims based on opposing discriminatory employment practices are cognizable under Title VII, the FLSA, and Section 1981, and "have the same requirements of proof and use the same analytical framework." *Blue v. Dunn Const. Co., Inc.,* 453 F. App'x 881, 883 (11th Cir. 2011). *See also Phillips v. Aaron Rents, Inc.,* 262 F. App'x 202, 207 (11th Cir. 2008); *Wolf v. Coca-Cola Co.,* 200 F.3d at 1342. Similar to claims made under the FCA, a plaintiff must first establish a prima facie case. In the discrimination or pay context, this involves "showing that: (1) he engaged in statutorily protected activity; (2) he suffered from an adverse employment action; and (3) . . . establish[ing] a causal link between the

protected activity and the adverse action." *Bryant v. Jones*, 575 F.3d 1281, 1307–08 (11th Cir. 2009).

With these principles in mind, the court turns now to plaintiffs' specific contentions of retaliatory conduct.

### 1. Mooren

Mooren pleads a retaliation claim under the FCA, Title VII, Section 1981, and the FLSA. She contends that S3 discharged her in retaliation for her protected activity—i.e., the two letters she submitted to the DoD in 2011 and the internal email she sent to Smith, Ryan, and Houser in which she alleged that S3 had violated several federal laws and was "committing fraud by falsifying information to various government agencies." Docs. 137-3 at 2–4; 137-2 at 43. This protected activity occurred approximately four months before Mooren's discharge. Generally, while temporal proximity may be used to establish causation,[1] "a three to four month disparity between the statutorily protected expression and the adverse employment action is not enough." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). Therefore, Mooren's claims fail at the prima facie level.

---

[1] Causation or a causal link entails a showing that "the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." *Shannon v. BellSouth Telecomm., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (internal quotation marks omitted).

Even if Mooren can make a prima facie case, her claims would also fail. S3 has articulated a legitimate reason for its decision to discharge Mooren—i.e., that she had access to sensitive company information and consistently evinced hostile and negative feelings about Smith.[2] *See, e.g.,* docs. 137-2 at 44, 45, 46–48. Because this reason is sufficient to rebut Mooren's prima facie case, *see Johnson v. Booker T. Washington Broadcasting Svc., Inc.,* 234 F.3d 501, 507 n.6 (11th Cir. 2000), Mooren can only prevail if she shows that S3's reason is pretext for retaliation.

To show pretext, Mooren claims that S3 has provided shifting rationales for her termination by citing her absenteeism and alleged insubordination. According to Mooren, these two reasons establish that her role as a DoD informant motivated S3's decision. As an initial matter, providing multiple reasons for a discharge is distinct from the shifting rationales an employer may provide over a period of time. Here, the memo that accompanied Mooren's termination listed both the absenteeism and the insubordination. Doc. 137-2 at 46–48. In fact, in addition to stating that Mooren had failed to complete a forty hour workweek, the termination

_____

[2] In the weeks before her termination, a supervisor issued a memo (undated) about Mooren's purported absenteeism over the preceding months and her apparent poor attitude, doc. 137-2 at 44, and a personnel manager wrote a separate statement regarding Mooren's absenteeism in a March 21, 2012 memo, doc. 137-2 at 45. Also, in a memo dated March 30, 2012, the personnel manager noted that Mooren had taken notes in an employee meeting, refused to say why, and added that she had filed a complaint with the DoD. Doc. 137-2 at 46. When asked about the complaint, Mooren stated that she was "protected and she did not have to tell us any information." Doc. 137-2 at 46–47. S3 also provided a memo dated a month after Mooren's termination in which Jackie Hicks detailed that Mooren had violated S3's open door policy. Doc. 137-2 at 48.

memo also outlined S3's belief that Mooren had become increasingly hostile and vocal in her dislike of Smith. *See* docs. 137-2 at 46–47; 137-5 at 28. Because multiple reasons may form the basis for an employer's decision, and, in fact, the law recognizes that an employer can cite multiple reasons, *see Combs v. Plantation Patterns*, 106 F.3d 1519 (11th Cir. 1997), S3's citation of these two reasons does not support Mooren's contention of shifting rationales.

As additional evidence of pretext, Mooren notes also that (1) Smith and S3's employees ostracized her; (2) that S3 was concerned about potential information sharing with persons hostile to S3 based on a memo prepared by Tina Maddox in March 2012 in which Maddox outlined a conversation with a disgruntled former employee who stated that he had filed a complaint against Smith and needed evidence to put Smith in jail, *see* docs. 136 at 43, 137-3 at 2; (3) that DoD executed a search warrant on S3 six months after her discharge, doc. 136 at 45; and (4) that before her discharge, S3's personnel manager and an HR representative asked her about conversations with non-S3 personnel and the content of her DoD complaint, doc. 137-2 at 46–47. These contentions are unavailing because, first, the discharge memo and Mooren's testimony indicate that the two employees only asked Mooren about her DoD complaint after Mooren disclosed the existence of the complaint. Docs. 131-1 at 88; 137-2 at 46. An employee cannot voluntarily disclose a whistlebower complaint and then argue that the employer's questions regarding the

contents of the complaint are proof of retaliatory intent. Second, absent evidence that S3 knew *before* it discharged Mooren that the DoD intended to execute a search warrant, the DoD decision to execute a warrant six months *after* Mooren's discharge cannot act as proof of purported retaliatory intent by S3. Ultimately, taking all inferences in Mooren's favor, Mooren's contentions fail to rebut S3's assertion that it discharged her due to her increasingly hostile attitude and absenteeism, reasons which Mooren does not address. Because Mooren has failed to rebut S3's articulated reasons for her discharge, summary judgment is due on these claims. *See Chapman v. AI Transport*, 229 F.3d 1012, 1024–25 (11th Cir. 2000) ("If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claims.").

## 2. *Foster*

Foster alleges retaliation under Title VII, the FCA, Section 1981, and the FLSA. As evidence of protected activity, Foster cites her complaint to the Accounting Board in which she raised allegations of fraud against Ryan and S3. Doc. 136 at 29. Shortly after the complaint, S3 discharged Foster "based upon [Foster's] filing false information to the Alabama State Board of Accountancy." Doc. 137-2 at 42. This complaint, which alleged that Ryan's purported falsification

of documents violated specific codes of conduct and failed to follow "standards and/or procedures or other requirements in governmental audits," doc. 137-4 at 155, is insufficient to establish that Foster engaged in protected activity under Title VII or Section 1981, *see* 42 U.S.C. § 1981; 42 U.S.C. § 2000e-3. Therefore, the Title VII and Section 1981 claims fail.

As for the FCA retaliation claim, Although S3 discharged Foster shortly after she filed the complaint, Foster's claim under the FCA fails because she acknowledged to S3 that her complaint to the Board contained no proof of fraud. Doc. 131-4 at 121–23. An employee does not engage in protected conduct where she "fabricates a tale of fraud to extract concessions from the employer, or . . . just imagines fraud but lacks proof." *Neal v. Honeywell, Inc.,* 33 F.3d 860, 864 (7th Cir. 1994), *abrogated on other grounds by Graham County Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409 (2005). Rather, the protected activity must involve a "distinct possibility" that litigation will occur. *Mack v. Augusta-Richmond Cty., Ga.,* 148 F. App'x 894, 897 (11th Cir. 2005). Therefore, because Foster relied on fraudulent facts in making her complaint, and Foster admitted as much during the internal investigation, doc. 131-4 at 13–15, no reasonable possibility of an FCA action existed at the time of her complaint. As such, Foster has failed to establish that she engaged in protected activity to sustain her FCA retaliation claim.

Alternatively, the FCA, Section 1981, and Title VII claims also fail because of Foster's failure to rebut S3 and Smith's contention that they discharged Foster for filing a *false* complaint that they considered as a personal attack on Ryan. Doc. 137-2 at 42. "[T]he employer's burden is satisfied if [it] simply explains why [it] has done or produc[es] evidence of legitimate nondiscriminatory reasons." *Bd. of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25 n.2 (1978). Relevant here, Foster has not rebutted S3's reasoning, nor has she offered evidence of pretext. As such, the motion for summary judgment is due to be granted on Foster's FCA and Title VII claims.

In support of the FLSA retaliation claim, Foster cites two instances of protected activity: (1) her statement to S3 and Smith at some unknown date that S3's method of record keeping and calculation of pay violated the FLSA; and (2) her two complaints about the misclassification of employees, including herself. Doc. 131-4 at 14, 23. Based on the record, Foster complained to the HR manager about being allegedly misclassified as exempt in November 2009 and complained in a meeting in April 2011 about the classification of employees. Doc. 131-4 at 23. Although both reports qualify as protected activity, *see E.E.O.C. v. White and Son Enters.*, 881 F.2d 1006, 1011 (11th Cir. 1989) (employees' informal complaint to supervisor about unequal wages constitutes "an assertion of rights protected" under the FLSA), Foster has not demonstrated a causal connection between these two

complaints which occurred two years and seven months, respectively, before her discharge. *See Thomas v. Cooper Lighting, Inc.,* 506 F.3d 1361, 1364 (11th Cir. 2007). Moreover, summary judgment is also due because of Foster's failure to rebut the articulated reason for her discharge. *See Frazier*, 479 F. App'x at 932.

### 3. *Matthews*

Matthews pleads alleged retaliation claims under the FLSA, Title VII, the FCA, and Section 1981. Matthews' protected activity includes complaints internally about alleged failure to maintain OFCCP required applicant flow logs and an affirmative action plan, alleged FLSA violations and pay discrimination, and improper coding in the Costpoint system which resulted in the submission of inaccurate reports to the government. Doc. 118 at 60. Therefore, because these complaints qualify as protected activity,[3] and in light of Matthews' discharge shortly thereafter, Matthews has made a prima facie case of retaliation.

As such, the burden reverts to S3 to articulate a legitimate non-retaliatiory reason for the discharge. In that respect, S3 and Smith assert that they discharged Matthews because she expressed unhappiness and displayed insubordinate

---

[3] *See U.S. ex rel. Sanchez v. Lymphatx,* 596 F.3d at 1304 (An employee "may put her employer on notice of possible [FCA] litigation by making internal reports that alert the employer to fraudulent or illegal conduct."); *see also Saffold v. Special Counsel, Inc.,* 147 F. App'x 949, 951 (11th Cir. 2005) ("Title VII protects individuals who have filed formal EEOC complaints and individuals who have filed informal complaints internally to their supervisors."); *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011) (finding oral complaints sufficient to constitute protected activity under the FLSA); *Shannon v. Bellsouth Telecommunications, Inc.,* 22 F.3d 712, 715 n.2 (11th Cir. 2002) (an employee engages in protected activity by "voicing complaints of [racial] discrimination" to his employer).

behavior after her demotion for misrepresenting key skillsets S3 required for the Human Resources Manager position. Doc. 131-2 at 58. *See also* doc. 137-2 at 38–39 (termination memo prepared by Betty Ragsdale indicating that Matthews was unhappy that S3 had posted her pervious position, that her answers to Rigney were "conflicted" and "[h]er answers indicated less of an understanding of her job than even previously expected," and that Matthews was unhappy that S3 discharged Foster.). However, taking all inferences in Matthews' favor, summary judgment is due to be denied on the Title VII, Section 1981, and FCA retaliation claims because Matthews has identified facts in the record that support her contention that S3's stated reason is pretextual. As an initial matter Ragsdale, who authored the discharge memo, could not identify in her deposition any instance of Matthews' alleged insubordination. Doc. 131-7 at 17–18. Moreover, S3 discharged Foster five days after it discharged Matthews. *See* doc. 137-2 at 42. While S3 contends that it made a typographical error in citing Matthews' purported anger over Foster's discharge, instead of her anger over the placement of Foster on administrative leave, questions regarding the accuracy of testimony are credibility issues for a jury. Therefore, in light of S3's failure to identify specific incidents of insubordination, and S3's discharge of Foster after Matthews' discharge, Matthews has created sufficient doubt about the articulated reason to let a jury decide whether S3 retaliated against Matthews or discharged her for legitimate reasons.

The court reaches a different result on the FLSA retaliation claim. After Matthews and her supervisor informed Smith that S3's lunch and learn programs violated the FLSA by requiring employees to work through the lunch hour without pay, docs. 137-4 at 33, 131-5 at 15, S3 stopped the practice, *see* doc. 131-5 at 41. The cessation of the practice suggests that S3 simply implemented Matthews' suggestion and had no reason to retaliate against her on this issue. This is even more so when, as here, there is no evidence that S3 took any adverse action against the supervisor who joined Matthews in raising the issue to S3. Therefore, because an FLSA retaliation claim requires a plaintiff demonstrate that she "would not have been fired but for [her] assertion of FLSA rights," *Wolf*, 200 F.3d at 1343, and Matthews has failed to make such a showing, her FLSA claim fails.

## 4. *Claims against Gary Rigney*

The plaintiffs contend that Rigney, a lawyer in private practice who served as S3's outside general counsel, retaliated against them, in violation of the FCA, Title VII, and Section 1981, because S3 ultimately discharged them as a result of Rigney's investigation into Mooren's and Foster's complaints of fraud. As an outside counsel, Rigney had no employer-employee relationship with the plaintiffs for purposes of the FCA, and, as such, could not have retaliated against them. *See Lawson v. FMR, LLC,* 134 S. Ct. 1158, 1166 (2014) ("[D]ischarge, demotion, suspension, threats, harassment, or discrimination in the terms and conditions of

employment [] are commonly actions an employer takes against its own employees.").

The Title VII and Section 1981 retaliation claims against Rigney also fail. First, Rigney was not an employer and there is no individual liability under Title VII. *See Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir. 1991). Second, contrary to plaintiffs' contention, conducting the investigation alone is insufficient to create liability under Title VII or Section 1981. Such a rule would undermine the investigative process by discouraging outside counsel and other uninterested parties from agreeing to conduct objective investigations. Finally, there is nothing in the record, other than his purported close relationship to Smith, to suggest that Rigney instigated an adverse employment action against the plaintiffs either on his own or through his position as investigative counsel for S3.

## B. FLSA Overtime Claims

Foster raises a claim under the FLSA for overtime pay. The FLSA "obligates employers to compensate employees for hours in excess of 40 per week at a rate of 1 ½ time the employees' regular wages." *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2162 (2012) (citing 29 U.S.C. § 207(a); *see also* 29 U.S.C. § 206(a)). Because the plaintiff bears the burden, *see Allen v. Board of Public Educ. for Bibb Cty.,* 495 F.3d 1306, 1315 (11th Cir. 2007), to prevail, the plaintiff must demonstrate that (1) she worked overtime without compensation and (2) her

employer knew or should have known of the overtime work. *Reich v. Dep't of Conservation and Nat. Res.*, 28 F.3d 1076, 1081–82 (11th Cir. 1994) (citing 29 C.F.R. § 785.11). To that end, an employee may satisfy this burden by "produc[ing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Jackson v. Corrections Corp. of America*, 606 F. App'x 945, 952 (11th Cir. 2015) (internal quotations omitted).

Foster has failed to meet her burden. Relevant here, Foster contends that she worked over forty hours on multiple occasions as a payroll administrator and that S3 and Smith failed to pay her the statutorily required overtime compensation. *See* docs. 118 at 65; 131-4 at 16. However, Foster has not provided any evidence to support this contention. Instead, Foster maintains that the time stamps on her timesheets would allow her to present the necessary evidence by calculating the overtime hours she worked. Doc. 131-4 at 24–25. Unfortunately, Foster has not submitted the timesheets to allow the court to ascertain how exactly they support her claim and she has not explained why she is unable to provide the calculation at this juncture. Ultimately, Foster bears the burden of proving that she worked overtime without compensation. *See Reich*, 28 F.3d at 1081. Simply stating that a review of the timesheets at a later date will show the claimed overtime hours is insufficient for Foster to meet her burden. *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d

1560, 1563 (11th Cir. 1989)) ("[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."). While the FLSA is not intended to "penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work," the employee must still "prove[] that he has in fact performed work for which he was improperly compensated and . . . produce[] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946). Foster's contention that with access to timesheets she could determine her overtime hours is an unsubstantiated allegation that is too vague to allow her claims to survive summary judgment. *Jackson*, 606 F. App'x at 952. As such, S3's motion is due to be granted on this claim.

## CONCLUSION AND ORDER

For the foregoing reasons, Gary Rigney's motion for summary judgment, doc. 127, is **GRANTED** and the claims against him are **DISMISSED WITH PREJUDICE.** S3 and Smith's motion for summary judgment, doc. 128, is **GRANTED** as to the claims brought by Elizabeth Foster and Denise Mooren, and these claims against them are **DISMISSED WITH PREJUDICE**. S3 and Smith's motion against Katrina Matthews is **GRANTED** solely as to the FLSA claim against S3 and Smith and the Title VII claim against Smith. Matthews may

proceed on her Title VII, Section 1981, and FCA retaliation claims against S3 and her Section 1981 and FCA retaliation claims against Smith.

**DONE** the 18th day of August, 2017.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE
